[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION RE: MOTIONS FOR MODIFICATION AND CONTEMPT
On March 16, 2001, the plaintiff filed a motion to reopen and modify judgment in which she requested that the amount of her court ordered weekly child support payment be reduced.
On August 27, 2001, the defendant filed a contempt motion. In it, he alleged that the plaintiff had defied the court's order that she pay her portion of the premium for the minor child's medical insurance coverage.
The motions were heard coterminously by this court on October 12, 2001. Both parties proceeded pro se at the hearing. The plaintiff testified at hearing and introduced one exhibit into evidence. The defendant also testified and offered four exhibits. The parties federal income tax returns for the year 2000 were also admitted as court CT Page 14129 exhibits.
Both parties submitted sworn financial affidavits at the October 12, 2001 hearing. Neither party prepared a child support guideline worksheet.
The court has carefully considered all of the evidence adduced at hearing, as well as the parties' financial affidavits. The court has taken judicial notice of documents contained in the courts' file concerning the extensive procedural history of this matter. The court has also carefully considered the provisions of Connecticut General Statutes §§ 46b-86 and 46b-87, and has applied them to the facts of this case.
 FACTUAL FINDINGS
The court (Levine, J.) dissolved the parties' marriage after an uncontested hearing on September 13, 1996. At that time, custody and financial orders were entered in accordance with an agreement reached by the parties.
Custody of the three children who were then minors[1] was awarded to the plaintiff and defendant jointly. The children's primary place of residence was to be with the defendant, subject to the plaintiff's reasonable rights of access.
The dissolution decree provided that neither party would pay child support to the other for the first nine months following the date of judgment. Thereafter, the plaintiff was ordered to pay child support in the amount of $125.00 per week "for those weeks she is employed.' The judgment also provided that "[i]n the event neither party has . . . medical coverage then they shall share equally the cost of such coverage with reasonable benefit levels.'
Since the date of judgment, there has been extensive litigation in this matter which has been primarily related to contempt and modification motions filed by both of the parties. On October 8, 2000, the court (Barall, J.) granted a motion by the plaintiff for modification of child Support. Judge Barall ordered that the plaintiff pay the defendant $185.00 per week as child support for the two children who were still minors, plus $35.00 per week on an arrearage of $2,891.00 for past child support and medical expense reimbursement. On October 8, 2000, the plaintiff's financial affidavit reflected projected gross income of $900.00 per week[2], and the defendant's financial affidavit indicated gross weekly wages of $1,434.97. In his ruling Judge Barall found that the plaintiff had not proven that she had a shared parenting arrangement which would justify a deviation from the State Child Support Guidelines. CT Page 14130
After David Byron attained the age of majority last March, the plaintiff filed the instant motion for modification. As a temporary order, pending the outcome of this hearing on that motion, the court (Caruso, J.) ordered that the plaintiff pay weekly child support for her sixteen year old daughter, Lauren, in the amount of $92.50 per week.
The plaintiff is self-employed as a computer software writer and consultant. She operates her business, which is established as a limited liability corporation (LLC), out of her home. The plaintiff holds a bachelor's degree in English, and a master's degree in Business Administration.
The plaintiff's business generates gross receipts of $8,600.00 per month, or $103,200.00 annually. However, the plaintiff indicated on her October 12, 2001 financial affidavit that she receives gross weekly wages of $900.00 and net weekly wages of $633.89, from her business. The plaintiff claimed that certain expenses marked with asterisks on her financial affidavit were legitimate business expenses which should be deducted from the gross receipts of her limited liability corporation. The court did not find this testimony, or the plaintiff's financial affidavit, to be credible.
From the $103,200.00 she receives in gross receipts from her self-employment as a computer consultant and writer, the plaintiff claims that she receives actual gross annual income (before taxes and deductions) of $46,800.00 annually, or $3,900.00 per month. The business-related expenses enumerated on the plaintiff's financial affidavit total $34,493.04 per annum, or $2,874.42 per month. When the claimed monthly income figure of $3,900.00 is added to the monthly expense number of $2,874.42 the total is $6,774.42. When that sum is subtracted from the limited liability corporation's gross monthly receipts of $8,600.00, there is a surplus of $1,825.58 per month. The plaintiff did not offer convincing testimony and evidence at hearing which explained this disparity, or clarified how she arrived at the net income figure listed on her affidavit.
Although the court cannot determine, based on the evidence presented, the precise amount of the plaintiff's weekly income, the court finds that it is greater than the amount listed on the financial affidavit which she submitted at this hearing.
The plaintiff claimed during hearing that Lauren is about to obtain her license and has recently been spending more time at the plaintiff's home. She indicated that Lauren has rooms at both parties' residences. Based on the evidence presented at hearing, however, the court finds that CT Page 14131 the plaintiff did not prove by a preponderance of the evidence that she and the defendant have shared physical custody of Lauren. The plaintiff also failed to prove at hearing that the present physical custody arrangement substantially increased her expenses.
The defendant holds a bachelor's of science degree in electrical engineering, a bachelor's of science degree in real estate appraisal, and a master's of business administration degree in finance. At the time of the hearing last year before Judge Barall, the defendant was employed as a computer consultant and earned gross weekly salary of $1,434.97.
At the hearing before this court, the defendant claimed to be unemployed. He submitted a financial affidavit that indicated he had no income whatsoever. The defendant claimed that he had suffered a stroke and could not work because he would not be available to an employer every day as a result of his medical condition. The defendant testified that he was not receiving social security disability payments, and he offered no medical records or other competent evidence concerning the nature of his medical problems, or how they impacted his ability to earn income. The defendant claimed that he was supporting himself with the equity that he received from the sale of the home. The court did not find this testimony, or the defendant's financial affidavit, to be credible.
The defendant admitted during his testimony that he spends two to five hours per day buying and selling securities by computer ("day trading"). The defendant failed to list any income from this enterprise on his financial affidavit, and claimed that this was due to the fact that he had only been involved in day trading for about one month prior to hearing.
However, the defendant also admitted that he had not sought entry level employment because it was more lucrative for him to engage in day trading activity than that type of work.
The court finds that the defendant's ability to spend between two and five hours a day buying and selling securities contradicts his assertion that he could not engage in some type of meaningful employment activity. The court also notes that the defendant testified articulately in court, appears to be extremely intelligent, and did not appear to be in discomfort or physically or mentally impaired.
Here, too, the court cannot find, based upon the evidence presented, the precise amount of income which the defendant presently receives. However, the court finds that the defendant's present income is greater than the amount of income indicated on his sworn financial affidavit. Based upon the defendant's education, employment history and present CT Page 14132 activity in the stock market, the court also finds that he has the present capacity to earn income far in excess of the "zero" income figure listed on his financial affidavit.
The defendant's contempt motion centers around his allegation that the plaintiff has willfully failed to reimburse him for the cost of medical insurance coverage for Lauren. The following additional facts are germaine to the resolution of this contempt motion.
When the defendant became unemployed, he continued his group medical and dental insurance for himself and his four children under provisions of the so-called "COBRA legislation'. The defendant's cost for this coverage is $655.00 per month. The defendant has continued all of his four children under this coverage, despite the fact that three of them are now more than eighteen years of age.
The defendant claimed that the plaintiff should reimburse him for this coverage at the monthly rate of $156.58 per month. The defendant claimed that this figure represents one-half of the amount that he pays for Lauren's insurance under the family plan.
The plaintiff disagreed with the defendant concerning the monthly reimbursement sum. The plaintiff contends that since Lauren is one of five persons covered under the family plan, her proportionate share of the expense should be fifty percent of the $131.00 per month ($655.00 divided by 5) that is attributable to Lauren's portion of the premium. The plaintiff declined to pay the defendant the monthly sum of $156.50 which he requested.
The court concurs with the plaintiff's position on this issue. The court finds that the plaintiff's legal support obligation extends only Lauren. Since four other people (including the defendant) are also covered under the defendant's plan, the plaintiff is responsible for fifty percent of one-fifth of the monthly premium cost.
Since the plaintiff cannot be required to pay amounts greater than those required under the judgment, the defendant has no proven contempt by clear and convincing evidence.
The defendant's motion for a finding of contempt is hereby denied. The court does find that the plaintiff is responsible to pay the defendant the sum of $65.50 per month as her proportionate share of the cost of Lauren's medical and dental insurance coverage. The court will set orders regarding the repayment of past due sums below.
ORDERS
CT Page 14133
As noted above, the plaintiff has not proven by a preponderance of the evidence that she has shared physical custody of Lauren, or that her expenses have increased substantially for Lauren's care. The plaintiff has not proven by a preponderance of the evidence that there has been a material and substantial change in her financial circumstances since the date of the last modification.
It is undisputed that David has attained majority and that 1Lauren is now the only remaining minor child. This is a substantial change in circumstances.
However, the parties did not submit child support guideline worksheets at hearing, and the court has found that the financial affidavit of each party lacked candor. The parties' failure to cooperate with each other, and the court, concerning the forthright disclosure of their respective financial circumstances prevents this court from making an accurate finding as to the proper amount of child support which the plaintiff should pay to the defendant.[3]
A child has a right to parental support that is independent of the rights of his or her parents. See Guille v. Guille, 196 Conn. 260
(1985).
"A court is entitled to rely upon the truth and accuracy of the sworn statements required by § 463 of the Practice Book, and a misrepresentation of assets and income is a serious and intolerable dereliction on the part of the affiant which goes to the very heart of the judicial proceeding." Grayson v. Grayson, 4 Conn. App. 275, 288
(1985) citing Casanova v. Casanova, 166 Conn. 304, 305, 348 A.2d 668
(1974).
In this case, the plaintiff and the defendant submitted inaccurate financial affidavits and failed to prepare child support guideline worksheets. This impeded the court's ability to determine the appropriate amount of parental support which the minor child is entitled to receive. Accordingly, the court issues the following orders:
1. The plaintiff's motion for a decrease of child support is herebydenied. The court shall retain ongoing jurisdiction over this matter in order to determine the proper level of child support which should be paid by the plaintiff in accordance with State child support guidelines;
2. Pending further hearing in this matter, the court will continue Judge Caruso's temporary order that the plaintiff pay to the defendant the sum of $92.50 per week as child support; CT Page 14134
3. The court, on its own motion, directs the clerk of the court to appoint a guardian ad litem to protect the interests of the minor child in connection with parental support orders;
4. Further hearings on this matter shall be held before this court at 2:00 p. m. on November 19, 2001. Both parties and the guardian ad litem shall attend this hearing;
5. Each party shall prepare and submit to the court at the November 19, 2001 hearing an accurate, updated sworn financial affidavit. In addition to his financial affidavit, the defendant shall bring to said hearing the following information:
 a. Documentary proof concerning all income earned by him during the f our month period immediately preceding the hearing;
 b. Copies of all records related to all security transactions executed by him during the four month period immediately preceding the hearing;
 c. A detailed explanation of how the defendant determined the weekly income figure listed on the financial affidavit which he will submit to the court on that date.
6. In addition to her financial affidavit, the plaintiff shall bring to said hearing the following information:
 a. Documentary proof concerning all gross receipts earned by her limited liability corporation during the four month period immediately preceding said hearing;
 b. Comprehensive documentary proof concerning all claimed business expenses of her limited liability corporation during the four month period immediately preceding said hearing;
 c. A detailed explanation of how the plaintiff determined the weekly income figure listed on the financial affidavit which she will submit to the court at that hearing.
7. At said hearing the parties shall provide copies of their financial affidavits and all of the information listed above, to each other, the guardian ad litem, and the court. Each party is ordered to prepare, at their own expense prior to hearing, sufficient copies of all the aforesaid documents for the court, the guardian ad litem, and the opposing party. At said hearing the parties, and the guardian ad litem, CT Page 14135 shall submit to the court completed child support guideline worksheets. The parties and the guardian ad litem shall confer with each other at court prior to the commencement of the hearing in order to prepare said guideline worksheet forms. In order to comply with that order, the parties and the guardian ad litem are ordered to report to the office of the Domestic Relations Caseflow Coordinator at this court promptly at 12:30 p. m. on November 19, 2001 for the purpose of exchanging financial information and conferring about the preparation of guideline worksheets.
8. Upon review of the aforesaid information, and after hearing both parties and the court appointed guardian ad litem, the court shall make final child support orders in conformance with the guidelines.
9. The guardian ad litem's fee shall be shared equally by the parties at a rate to be determined at the hearing.
10. In conformance with the court's findings above, the defendant shall submit to the plaintiff within ten (10) days of today's date an appropriate calculation (supported by documentation), of the amount of reimbursement for Lauren's medical insurance which is owed by the plaintiff to the defendant. Within seven days of receipt of same, the plaintiff shall reimburse the defendant for said sum.
SO ORDERED.
Dyer, J.